The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Lincoln Gabrielle Pupo, appeal number 19-1505. Attorney McCutcheon, please introduce yourself for the record and proceed with your argument. Good morning. Andrew McCutcheon on behalf of the appellant, Lincoln Pupo. I'd like to reserve two minutes for rebuttal if I may. You may. May it please the court. The district court committed procedural and substantive error in fashioning a 70-month sentence for an intermittently homeless man suffering from unspecified schizophrenic spectrum disorder. First, the district court committed procedural error in failing to specifically and meaningfully address Mr. Pupo's schizophrenia spectrum diagnosis and the role of mental illness in the commission of the unarmed, obviously unplanned carjacking involved in this case. Tellingly, not once did the district court mention the psychodiagnostic report of the expert clinical psychologist who had evaluated Mr. Pupo or make specific findings on the issue. It's well known that those whose criminal behavior is shaped by mental and emotional problems, childhood trauma, and poor social support have long been viewed as less culpable and warranting of draconian punishment. Both the PSR and the government… Isn't it correct, however, that the district court specifically discussed sending your guy to a penal institution that had mental health facilities? That's correct, Your Honor, but that's a general discussion perhaps of mental health. It didn't go to the heart of the issue, which was a specific diagnosis. Wasn't that a recognition, however, that the judge understood that he needed mental health treatment? I think it may be a general recognition that mental health treatment is relevant on some level, Your Honor, but what the court needed to do was address the specific diagnosis that was at hand, Mr. Pupo's specific mental health history, and apply them to the 3553A factors and insert the prism of mental illness into sentencing considerations such as level of culpability, general deterrence, and then prior criminal history. That's not what occurred here, Your Honor. Both the PSR and the government noted the possibility of a departure or variance based upon Mr. Pupo's mental health struggles, with the government recognizing that Mr. Pupo's mental health struggles and drug abuse were at the root of his difficulties and identifying his potential at achieving rehabilitation and recommending a sentence more than a year below that. Our case law isn't terribly friendly to these kinds of issues. When the PSR contains information about a defendant's mental health problems or anything else, but in this case mental health problems, and when there's a general recognition that there is a mental health issue, our case law sort of assumes that the court took it into consideration in fashioning an appropriate sentence. Well, Your Honor, I believe that the court had to take into account the specific diagnosis here and the psychodiagnostic report that the expert rendered. Assuming that it did, Your Honor, on some level, and the closest that the district court did to doing that was in noting that Mr. Pupo had difficulty controlling his actions because of a, quote, chemical imbalance and stating he needs to, quote, remain committed to his medications and that treatment. That statement doesn't support the sentencing court's rationale. It also added that now he can understand… Counsel, not in the way that you would like, but I think the district court observed that the defendant was a time bomb ready to go off. I mean, that seems to be, again, not in the way that you would want, but that seems to be a recognition that your client does have serious mental issues, which at times can manifest themselves in worrisome criminal behavior. So isn't that, in a really shorthand summary way, reflect an awareness by the judge of this significant history of mental problems and substance abuse? It does on a general level, Judge. Again, the court needed to confront the specific diagnosis here. One thing that I do want to add… Four minutes remaining. Please go ahead. Thank you. No, please. One thing that I do think needs to be addressed, Judge, if the court is considering Mr. Pupo's mental illness and the specific symptoms that he's suffering from, it needs to confront those symptoms and evaluate how it impacted or could impact his behavior in relation to the offense conduct. For example, if Mr. Pupo is suffering from a disease that affects how a person feels, thinks, and behaves, then that directly relates to his level of culpability and the nature and circumstances of the offense. Mr. McCutcheon, were you the trial counsel? I was, Your Honor. Okay. Because I just have a slightly different question. In putting together this plea agreement, did you tell your client that the judge could go in a different direction from what the parties bargained for?  And generally, are you sort of aware that at least our experience with the district court in Puerto Rico, the judges tend to fashion sentences that seem to be higher than the bargain for sentence? I think it depends, Judge. When there's mitigation to the extent that there was in this case, I think and I hope that there would be a tendency to depart downward or to vary downward based upon that information. Well, regardless of what you hope for, I mean, what's the reality on the ground? Well, I had a PSR, Your Honor, that recommended a downward departure. I had a government recommending a sentence that was more than a year below the sentence that was ultimately fashioned by the district court. And those are two powerful considerations that we thought the district court would consider in conjunction with the psychodiagnostic report, which was identifying for the very first time a mental health diagnosis that had never been addressed in the past. So if Mr. Pupo was receiving treatment or hadn't received a diagnosis in the past for this specific condition, then any sort of mental health treatment he was receiving in the past would not have been effective. And if it was coupled with drug abuse, then that's a vicious, self-perpetuating cycle that was driving his life at that particular point in time. And that's why it was so important that the district court take into account this specific diagnosis, because for the first time we had a comprehensive view of Mr. Pupo's mental health past and what could be done in the future. If he's medicated, which is what the report said, then his risk of recidivism is much lower because he's not exhibiting symptoms. And so if we're able to couple that with structural changes in his life, such as a stable living situation and vocational training, that greatly reduces, for the first time ever, his risk of recidivism. And that was something that the district court didn't take into account and didn't address the specific impact of medication on his specific mental illness that was at issue in the case. We spoke about general concerns and him being a time bomb, but the district court never once considered the specific report and what medication would have on his mental health and his level of thought in the future if properly medicated. Your Honor, I do want to... Excuse me. Yes, Your Honor. I think your time is up, but I think Judge LaPlante has a question, although you've got to unmute yourself, Judge LaPlante. Yeah, I'm unmuted, Judge. Thank you. Okay. I'm not aware of the authority for the proposition that the sentencing judge needed to engage affirmatively and expressly with a specific diagnosis or how it relates to sentencing factors. But assuming that you're right about that, let me just make that assumption. The judge wasn't bound to view it as mitigating, though, was the judge? The judge could have viewed that as in some way aggravating from the standpoint, frankly, of public safety, right? And maybe that's what he did when he mentioned the ticking time bomb. I wonder if you... Do you concede that point or is your argument that the only way that this mental health diagnosis could be applied to the sentences in a mitigating way? Sure. I think if the court had considered the specific information that was included in the report and made specific findings relating to the diagnosis and the impact of medication and how that would impact the risk of recidivism and his level of dangerousness, that would be something that was considered. The problem is that that wasn't done. The minimal statements that the district court made on the issue of mental health actually undercut its sentencing rationale because it spoke about how now Mr. Pupo can understand he needs to follow his medication regimen. But if Mr. Pupo wasn't understanding at the point in time in the past, then he's obviously not at the same level of culpability as somebody who enters into criminal conduct with a clear mind. And also if he wasn't receiving the correct medication, then he wasn't being properly treated. Time has expired. Counsel, what about Judge LaPlante's basic point that you seem to be arguing for a rule of specific engagement by the trial judge with the mental diagnosis that you put forth and your argument that's in mitigation. And if the judge does not explicitly engage with that argument and explain why the judge does or does not accept it, that amounts to procedural unreasonableness. That would be a brand new rule, wouldn't it? I'm not aware that we require that kind of explicit engagement with such an explicit argument. I think that would be something new, wouldn't it? I think this court has pointed out that if there's an issue that's central to the case, that's the paramount concern that impacts everything from the nature and circumstances of the offense to the personal history and characteristics of the offender to criminal history and things of that nature. That's something that the district court needs to take a close look at. It needs to make specific findings and it needs to directly insert that information into the sentencing calculus and put on the record what its findings are with regard to that particular issue. It obviously doesn't have to go through what this court has referred to as a rote incantation of the 3553A factors or address every single argument that a defendant's making. But if there is an issue that's central to the case, that's paramount to the case, then it is something that should be addressed. That was something that the Seventh Circuit noted in a nearly identical case in the United States versus Miranda, a case that's factually almost identical to this case. It was reversed and remanded for a 50-month sentence for an individual suffering from schizophrenia. So we would submit that this case is identical to Miranda and that if you don't address a specific diagnosis that's rendered by an expert and inserted in the sentencing calculus, that it is procedural error and it does warrant reversal and resentencing. Thank you, counsel. Thank you, Your Honor. Attorney McCutcheon, if you could please mute your device at this time. And Attorney Conner, if you could unmute your device, audio and video, and introduce yourself on the record for the court. Okay, good morning, Your Honors. This is Greg Conner on behalf of the United States. In this case, the district court weighed the admitted escalation in Pupo's criminal conduct, the admitted lack of impulse control, and considered those alongside other factors like Pupo's struggles with mental health. It then imposed a low-end guideline sentence, which is presumptively reasonable under this court's precedent. So this court should affirm the sentence because there was no reversible error in the district court's weighing of the sentencing factors or its decision not to downwardly depart. Now, first, there can be no serious dispute about what the main focus of this sentencing hearing was. Mental health was discussed throughout, and that started with both parties recognizing the connection between Pupo's history of mental health struggles and history of drug addiction and his escalating criminal conduct. Then the district court agrees and connects the history of drug abuse and mental health struggles with his criminal conduct and, as the panel has mentioned, expressed concern that he was a ticking time bomb. It then recommended treatment programs during the incarceration, it recommended a mental health facility, and it imposed conditions of supervised release that related to a treatment program. So the notion that mental health was not adequately considered at the hearing is just belied by the record. That is a stretch of this sentencing transcript. So really, and I think what is evident from the argument Pupo makes today is really, he just disagrees with how the district court weighed those considerations. And this court has made very clear that it's not going to step in and disturb the assignment of weight that a district court gives to one sentencing consideration versus another. Although not in the argument, but in the brief, opposing counsel criticizes the trial court for apparently factoring into the sentencing decision a series of arrests that the defendant had, not convictions. There were, I guess, six or seven adult convictions before the present offense, but there were also arrests and the district court says somewhat critically, I think, critical about the Commonwealth proceedings that they were probably dismissed because of speedy trial issues. But in characterizing the escalating criminal history of the defendant, she seems to take into account these arrests. Now, haven't we expressed concern about district courts relying upon arrests in portraying the criminal history of a defendant? Wasn't that problematic that the court seemed to factor that into the criminal history of the defendant? Not in this case, Your Honor, because the district court's reference to the arrest was part of its broader discussion. And our position is that this court shouldn't look at selected portions of the transcript in isolation. The impression the district court had of his criminal background was discussed throughout the transcript. And the district court mentioned everything that it had in front of it, including the half dozen criminal convictions that were escalating during Pupo's life, including the arrests and including the juvenile offenses. And actually, one of the things that the court left out, which presumably could could lead to an argument that his criminal history was underrepresented, is he had just attempted to steal a government vehicle from the airport and he was put in a mental facility temporarily for that. So that didn't factor into his criminal history, and it's obviously related to the carjacking in this case. So what started as relatively minor petty thefts gradually became more serious, became a car theft of a government vehicle, and then an outright carjacking on the threat of death. Counselor, we've certainly said that mere reference to an arrest history in and of itself doesn't constitute error. What's troubling here, though, is that the court seems to attribute any substantive outcome of those arrests to some problem with the Puerto Rico justice system, which takes it a step further. And it seems more problematic because it's nothing but speculation, and it's negative speculation as to rather saying those arrests didn't amount to anything because upon closer examination of what evidence was available, there was not sufficient reason to go forward with the charges. Your Honor, that was not the decision. That was not the reason the district court decided not to depart downward. And if anything, that was an explanation for federal practitioners what a local rule does. But specifically in regard to the decision not to downwardly depart, it's based on the district court's impression that he had, quote, many brushes with the law. And that includes a half dozen adult criminal offenses, which, remember, more than half of those are one point offenses. So when the district court is mentioning the arrest, it's part of the district court's concern that there are so many of these run-ins with the law that are stacking up, and the district court made the determination that that's coinciding with the history of mental struggle and drug addiction. So this is the first time he had a diagnosis of what specific mental health issue was troubling him. So how is this sentence the most effective manner of dealing with that mental health diagnosis? The statute says that the judge is supposed to consider the most effective manner of getting a defendant mental health treatment. That's correct, Your Honor. And I think that's the reason that throughout the sentencing transcript, the district court is addressing the concern that there is a connection between mental health and drug addiction and the escalating criminal conduct. And, yes, that is a consideration. It's one of many considerations in 3553A. And this court has said time and again that when a district court is assigning weight to the various sentencing considerations, it's not going to jump in and disturb that assignment of weight. That is within the discretion of district courts making these decisions. And for example, in addition to the escalating conduct, the lack of impulse control, the district court mentioned mental health throughout, mentioned the impact on the victims, and again, required pleaded with the defendant. You have to stay committed to these treatment programs or you're going to continue to have problems. So to the defense's point that the import of medication was not discussed, that's not at all the case below. The district court specifically ordered as a condition of supervised release that Pupua has to continue to take his meds as prescribed. But the district court was evincing the idea that it was concerned that if he didn't stay committed to these programs, he was the ticking time bomb type of concern. Counsel, you may not know the answer to this, but there's been reference. Judge Thompson mentioned earlier that the district court in imposing the sentence seemed to direct the Bureau of Prisons to try to place the defendant in a facility where mental health treatment would be available. Is that, can that happen? Is that a meaningful directive to the Bureau of Prisons? And are there particular facilities that are better at handling mental health issues than others? How important is that kind of directive from the district court? I'll have to confess some ignorance because I think there is going to be determinations within the Bureau of Prisons about availability and the individual capacity of a facility to address mental health concerns. But I think this is demonstrative that the district court was recommending all that it could to address Pupua's ailments and, you know, drug addiction and struggles with mental health. So, yes, there is some decision making that the Bureau of Prisons is going to do then based on availability of rooms and beds and that sort of thing. But as far as the case before you and whether the district court sentence was reasonable, it, I think, demonstrated its concern. And really everybody in this courtroom demonstrated the concern that Pupua could get the treatment he needed to right the ship. So if there are no further questions, I'll ask this court to affirm the sentence. Thank you, Counselor. At this time, if you would mute your audio and video and if Attorney McCutcheon would unmute his audio and video and reintroduce himself on the record and proceed. Good morning again. Andrew McCutcheon on behalf of Appellant Lincoln Pupua. Your Honor, the last thing that the district court mentioned before imposing sentence was dismissed unproven allegations from nearly a decade prior. In United States versus Colon Maldonado, this court found it a violation of due process to, quote, sentence on the basis of assumptions concerning a defendant's criminal record, which are materially untrue. In United States versus Marrero Perez, this court, citing Molina Martinez, stated that reliance on such arrests, quote, sets the wrong framework for the sentencing proceedings and requires reversal. At the end of the day, the criminal history category of five here was based in large part on the theft of Nintendo games, perfume and men's clothing. It severely overrepresents the level of culpability here and it is quite simply unreasonable. I think another point that needs to be addressed right now, Your Honor, is that Mr. Pupua is at USP Victorville. It's a United States penitentiary. He's not at a medical facility. The district court can't control where he goes. It simply makes a recommendation. And the sad truth is, is that he's most likely not receiving any treatment, let alone effective treatment designed to combat his specific conditions. And that's why it was so important for the district court to take into account his specific diagnosis, to review the specific medications that he was taking, to review how those medications would impact his mental health and his ability to function in the free society in the future, and then to make a reasoned decision based upon all that information, including specific conditions designed to address his mental health diagnosis. The overarching point here was that Mr. Pupua had a new diagnosis. Never in the past had he received MICA treatment, which is mental health controlled substances addiction treatment. That's what he needs. That's what he's never received in the past. That's the type of treatment that's going to change his behavior for good. And that's the type of treatment that Mr. Pupua identified in his sentencing memorandum, including specific locations where he could go for that treatment, including a placement with his mother or excuse me, his aunt in Florida. Those are all things that are going to affect a lasting change, not at the imposition of a 70 month sentence for a man who had suffered greatly throughout his entire life. I want to ask my colleagues if it's OK if I ask one question, even though. No, no, of course. Counsel, here's my my real quandary with your unconvicted arrests argument. This was a case where you were arguing for a departure from the criminal history category, right? Yes, sir. Two levels down, you wanted and two levels horizontally. So your burden, you didn't you didn't dispute the criminal history category in the PSR, right? It was a five. That's that's correct, John. So it sounds to me like you're arguing for a rule. It would seem to me, even despite the circuit law on this point, it seems to me you're arguing for a rule that in considering your request for a departure where you have the you have the burden to show that the category over represents his dangerousness and is likely to recidivate that a judge can't consider his arrest record, even unconvicted. That seems to me to be a reasonable thing for a judge to consider, discuss, at least examine. Is that not the case? I don't believe so, your honor, based upon this court's precedent, because when you're talking about unreliable information, it violates due process to consider that information. And that's specifically what this court has held in Cologne, Maldonado. And so when you go down that slippery slope, when you start to assume outcomes, then then you you make erroneous factual findings and you sentence a defendant based upon information that's that's not reliable, simply untrue. And another point that I'd like to add, your honor, if I may just briefly, is that the district court assumed all the dismissed priors from 2009 were from speedy trial violations. That's not true. That's a factual error. It wasn't. It was not a finding of no probable cause and another that was simply dismissed. So not is not only is the district court insinuating that Mr. Pupo escaped on a technicality, it's also making factual findings specifically relating to those prior dismissed allegations. And the problem the problem that you have, though, is that the category five is based upon actual convictions. I mean, your primary argument was that those were petty crimes and that it overrepresented his criminal history. So the the arrests and the arrests alone were really not factored into that category five finding. Correct, your honor. I don't think they should be under 4A1.3. I think it should be primarily concerned with convictions. And if we start hunting for dismissed, unproven allegations, then that's a violation of the framework that set out in the guidelines. And it's also a violation of this court's precedent because you're engaging in the type of speculative fact, finding and creation of of information that this court has repeatedly found to be improper. Any other questions for my colleagues? Thank you, counsel. Thank you. That concludes argument in this case. Attorney McCutcheon and Attorney Conner, you should disconnect from the hearing at this time.